**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION**

| | |
|---|---|
| ALLIANCE FOR THE WILD ROCKIES, *et al.* <br> Plaintiffs, <br> vs. <br> LEANNE MARTEN, *et al.*, <br> Defendants. | CV-15-99-M-BMM <br><br> **ORDER REGARDING MOTION FOR PRELIMINARY INJUNCTION** |

## I. Overview

Plaintiffs Alliance for the Wild Rockies and Native Ecosystems Council ("Alliance") have challenged an agency action and inaction in relation to the Greater Red Lodge Habitat and Vegetation Management Project (the "Project") on the Custer-Gallatin National Forest and the Custer Forest Plan, including the Northern Rocky Lynx Management Direction ("Lynx Amendment"). Alliance argues that Federal Defendants, Leann Marten, Regional Forester of Region One of the United States Forest Service, United States Forest Service ("USFS"), and United States Fish and Wildlife Service ("FWS"), violated the National Environmental Policy Act ("NEPA), the National Forest Management Act

1

("NFMA"), the Endangered Species Act ("ESA"), and the Administrative Procedure Act ("APA").

Alliance has filed a motion for preliminary injunction to prevent actions for the Project that may commence at any time. Alliance claims that an injunction would prevent imminent and irreparable harm. Federal Defendants oppose the motion for preliminary injunction.

## II. Factual Background

The Custer National Forest Beartooth Ranger District proposed the Project to "reduce hazardous fuels" in the Project area, "improve resiliency of forest vegetation and grasslands, enhance aspen habitat, and improve water quality." (FS000444.) The USFS issued a Final Environmental Impact Statement ("FEIS") for the Project on April, 2015. (FS000442-001261.) The USFS signed the Record of Decision authorizing the Project on May 19, 2015. (FS000072.) The Project area includes about 21,871 acres in a mountainous region of southcentral Montana, in the Beartooth Mountains located west and north of the City of Red Lodge, Montana. (FS000005; FS0000954 FS025780.) The Project area sits in the Greater Yellowstone Area, directly adjacent to the Absaroka-Beartooth Wilderness and two designated inventoried roadless areas: Burnt Montana and Red Lodge Creek-Hellroaring. (FS000541, FS000834.)

The Project authorizes 1,051 acres of commercial logging and an additional 756 acres of noncommercial burning and tree removal. The Project also authorizes the temporary construction, re-construction, or maintenance of approximately 19 miles of logging roads. (FS000027, FS000472.) The Project proposes activities that could affect wildlife occurrence and habitat use. (FS 000954.) The Project area provides habitat for grizzly bears and represents a critical habitat for lynx. (FS0000467.)

Canadian Lynx

U.S. Fish and Wildlife Service ("FWS") listed the Canada lynx as an ESA-listed threatened species in March 2000. FWS indicated that lack of guidance to conserve lynx and snowshoe hare habitat in outdated national forest plans represented the main threat to Canada lynx. (FS006684.) Snowshoe hare comprises lynx's primary prey. (FS0007545.)

The USFS and Bureau of Land Management ("BLM") entered into conservation agreements with FWS to consider the Lynx Conservation Assessment and Strategy ("LCAS") in response to the threatened listing. (FS007535.) FWS agreed to put on hold any project that would be "likely to adversely affect" lynx until the USFS had amended the forest plans. *Id*.

The LCAS identified and mapped four Lynx Analysis Units on the Custer National Forest. (FS00975.) FWS designated 1,841 square miles of land as critical

3

habitat for the Canada lynx. *Cottonwood Envtl. L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1077 (9th Cir. 2015). FWS did not designate, however, any National Forest Land as critical habitat. *Id*.

The USFS issued the Northern Rockies Lynx Management Direction ("Lynx Amendment") Record of Decision in March, 2007. (FS007531.) This Lynx Amendment fulfilled the USFS's obligation under the conservation agreement with FWS to amend the forest plans. (FS007535.) The Lynx Amendment "set specific guidelines and standards" for permitting activities that likely have "an adverse effect on Canada lynx." *Cottonwood Envtl. L. Ctr.*, 789 F.3d at 1078. These activities include "over-the-snow recreational activity, wildland fire management, pre-commercial forest thinning, and other projects that may affect the Canada lynx." *Id*. The USFS amended 18 National Regional Forest Plans, including the Custer Forest Plan, to include the Lynx Amendment. (FS000975; FS004927.)

The USFS initiated consultation under Section 7 of the ESA with FWS. FSW prepared a Biological Opinion/Incidental Take Statement on the effects of the Lynx Amendment on the Canada lynx. (FS035009-035293.) This Biological Opinion determined that the Lynx Amendment proved "not likely to jeopardize the continued existence of lynx." (FS035283.) The Biological Opinion concluded that the Lynx Amendments proved "necessary for long-term conservation habitat for lynx and its prey on Federal Lands." *Id*.

4

The 2007 Biological Opinion/Incidental Take Statement for the Lynx Amendment did not assess the impact of the Lynx Amendment on critical habitat on National Forest lands. The Biological Opinion concluded that"[t]he final [2006] critical habitat designation [for Canada lynx] did not include Forest Service lands that are covered by the proposed amendments. Therefore, this biological opinion will not analyze effects to critical habitat, as none will be affected." (FS035224.)

Four months later FWS announced that its critical habitat designation had been "improperly influenced by then deputy assistant secretary of the Interior Julie MacDonald." *Cottonwood Envtl. L. Ctr.,* 789 F.3d at 1078 (citing *Endangered and Threatened Wildlife and Plaints; Revised Designation of Critical Habitat for the Contiguous United States District Population Segment of the Canada Lynx*, 74 Fed. Reg. 8616-01, 8618 (Feb. 25, 2009)). As a result, FWS revised its critical habitat designation. 74 Fed. Reg. 8616-01, 8618 (Feb. 25, 2009). The revised designation identified critical habitat in 11 National Forests. *Id.*

Under the revised designation of lynx critical habitat, the Project area lies within the lynx critical habitat Unit 5- Greater Yellowstone Area. (FS000985.) The agencies have not reinitiated and completed ESA consultation to address the impacts of the Lynx Amendment on lynx critical habitat on National Forest lands. (Doc. 9 at 6.) Thereafter, the USFS determined in its Biological Assessment for the Project, that the Project may affect, but would not likely adversely affect the

5

designated critical habitat of the Canada lynx. (FS025851.) FWS concurred in that assessment. (FS025882.)

## III. Legal Framework

A. ESA

ESA Section 7(a)(2) provides that each Federal agency shall "insure that any action authorized, funded, or carried out by such agency . . . is not likely to jeopardize the continued existence of any endangered species or threatened species or result in the destruction or adverse modification of habitat" of the species. 16 U.S.C. § 1536(a)(2). The consulting agency must prepare a biological opinion if it appears that an action may affect an endangered or threatened species. *Cottonwood Envtl. L. Ctr.* 789 F.3d at 1085.

The biological opinion should explain how the action "'affects the species or its critical habitat.'" *Id*. (quoting 16 U.S.C. § 1536(b)(3)(A)). The consulting agency must suggest "reasonable and prudent alternatives" when the biological opinion concludes that the action proves likely to jeopardize an endangered or threatened species. 16 U.S.C. § 1536(b)(3)(A). The consulting agency may proceed with the action if the biological opinion concludes that the action proves not likely to jeopardize an endangered or threatened species. *Id*.

B. NFMA

The NFMA requires the Secretary of Agriculture to "develop, maintain, and, as appropriate, revise land and resource management plans for units of the National Forest System." 16 U.S.C. § 1604(a). The NFMA provides for forest planning at the forest level and the project level. 16 U.S.C. § 1604; *See Ohio Forestry Ass'n v. Sierra Club*, 523 U.S. 726 729-30 (1998). The USFS makes forest management decisions by developing Land and Resource Management Plans ("Forest Plan") for each unit of the National Forest System. *Forest Guardians v. U.S. Forest Serv.*, 329 F.3d 1089, 1092 (9th Cir. 2003). The USFS then implements the Forest Plan by approving site-specific actions that prove consistent with the Forest Plan and denying site-specific actions that prove inconsistent with the Forest Plan. *Id*. The Forest Plan also must comply with NEPA and the ESA. *Id*. at 1093.

C. APA Review

The Court reviews compliance with NEPA, NFMA, and the ESA under the judicial process set forth in the Administrative Procedures Act ("APA"). 5 U.S.C. §§701-706; *Native Ecosystems Council v. Dembeck*, 304 F.3d 886, 891 (9th Cir. 2002). The decision may be set aside only when the court finds the agency's decision "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Oregon Nat. Resources Council Fund v. Goodman*, 505 F.3d 884, 889 (9th Cir. 2007) (quoting 5 U.S.C. § 706(2)(A)). A final agency

decision will be overturned only if the agency committed "clear error in judgment." *Marsh*, 490 U.S. at 378.

## IV. Discussion

Alliance argues that Federal Defendants have violated the ESA, NEPA, and NFMA. This Order addresses the Federal Defendants' failure to reinitiate and complete consultation on the Lynx Amendment under the ESA.

**A. ESA Procedural Violation**

FWS designated 1,841 square miles of land as lynx critical habitat in 2006 following its decision in 2000 to list the Canada lynx as a threatened species. 71 Fed. Reg. 66008-001, 66030 (Nov. 9, 2006); 65 Fed. Reg. 16052-01, 16052, 16061 (Mar. 24, 2000). The critical habitat designation included no National Forest land. 71 Fed. Reg. 66008-001, 66030 (Nov. 9, 2006). The USFS adopted the Lynx Amendment in March 2007 and amended the Custer Forest Plan. (FS034852.)

The USFS and FWS issued a biological assessment and biological opinion for the Lynx Amendment in March 2007. (FS035209-FS035293.) The FWS then designated more lynx critical habitat land, including National Forests. 74 Fed. Reg. 8616-01, 8618 (Feb. 25, 2009). The USFS has declined to reinitiate ESA § 7 consultation with FWS on the Lynx Amendment since the new critical habitat designation.

The Ninth Circuit recently affirmed the Court's prior decision that "the revised designation of critical habitat for the Canada lynx required reinitiation of Section 7 consultation on the Lynx Amendments." *Cottonwood*, 789 F.3d at 1079, *affirming Salix v. USFS*, 844 F.Supp.2d 984 (D. Mont. 2013), en banc *petition and petition for panel rehearing denied* (Dec. 17, 2015). The plaintiff in *Cottonwood* also presented an ESA challenge to the USFS's failure to reinitiate consultation after the FWS designated National Forest land as critical lynx habitat. *Id.*

The agencies must reinitate "formal consultation" where the agency retains "discretionary federal involvement or control" over the action and one of the following occurs: (1) "new information reveals effects of the action that may affect listed species or critical habitat in a manner or to an extent not previously considered;" or (2) an agency lists a new species or designates new critical habitat that may be affected by the identified action. *Cottonwood*¸789 F. 3d at 1086 (citing 50 C.F.R. § 402.16)). The Ninth Circuit in *Cottonwood* determined that "[t]he 2009 revised critical habitat designation clearly meets the requirements of [the subsections set forth] above." *Id.*

The Court explained that the agency could not rely on project-specific consultations when that consultation would rely on the Lynx Amendment and the 2007 Biological Opinion. *Id.* at 1082. Agencies performed those analyses before FWS designated National Forest lands as critical lynx habitat. *Id.* The Court also

9

noted that project-specific consultations that fail to "include a unit-wide analysis comparable in scope and scale to consultation at the programmatic level" could comply with the ESA when they properly incorporate previously completed programmatic analysis through a tiered approach. *Id*. For instance, consultation for the timber projects in the region at issue need not include their own programmatic analysis if the consultation incorporates programmatic analysis from a proper Lynx Amendment consultation. The Supreme Court of the United States has declined to review the Ninth Circuit's decision in *Cottonwood*. As a result, the Ninth Circuit's ruling remains.

The Ninth Circuit recently affirmed a need for reconsultation of the Lynx Amendment in *Alliance for the Wild Rockies v. Christensen*, 2016 WL 6465748 (9th Cir. 2016). The Ninth Circuit determined that the Forest Service's failure to reinitiate consultation on the Lynx Amendment violated the procedural requirements of the ESA. *Id.* The Court enjoined two timber projects on the Gallatin National Forest until the reinitiation on the Lynx Amendment could be concluded, and that analysis could be incorporated in a new consultation on the two projects. *Id.* The Court so determined "because the habitat assessments for the projects . . . rel[ied] on the pre-designation version of the Lynx Amendments." *Id.*

Conversely, when the Forest Service has analyzed impacts on the lynx independent of the Lynx Amendment, this court has found no ESA procedural

violation. *Alliance for the Wild Rockies v. Weber*, 979 F. Supp. 2d 1118, 1132-36 (D. Mont. 2013). Similar to the project at issue, the Forest Service in *Weber* relied directly on the primary constituents of lynx habitat, which were obtained from the rule designating critical habitat. *Id.* at 1136. The Court decided *Weber*, however, before *Cottonwood* or *Christensen* fully established the need to reinitiate consultation on the Lynx Amendment.

*Weber* can be distinguished further from the case at issue because the projects in *Weber* were not set to occur in occupied Lynx habitat. *Id.* at 1132. The projects were also non-commercial and required no new roads or heavy equipment. In contrast, the timber project at issue in this case would take place wholly in occupied Lynx critical habitat. (FS000561, FS000951.) The Project also authorizes the construction, re-construction, or maintenance of 19 miles of roads and the commercial logging of 1,051 acres. (FS000027, FS000472.) This court in *Weber* found the non-commercial, non-invasive nature of the projects at issue important in determining that "the standards from the Lynx Direction do not need to be analyzed to comply with the ESA." *Weber*, 979 F. Supp. 2d at 1133.

*Cottonwood* counsels that the Lynx Amendment needs to be analyzed in this case. The Ninth Circuit warned in *Cottonwood* that "project-specific consultations do not include a unit-wide analysis comparable in scope and scale to consultation at the programmatic level." *Cottonwood Envtl. L. Ctr.*, 789 F.3d at 1082. Given

11

that the Forest Service has relied solely on the critical habitat rule in its analysis, it has failed to incorporate the programmatic analysis that the Lynx Amendment consultation provides.

In light of the Ninth Circuit and this court's rulings in *Cottonwood, Weber, and Christensen* and the relative intensity of this project, the Court determines that the Project's consultation requires incorporation of a programmatic analysis. Incorporation of a programmatic Lynx Amendment consultation will be lawful, however, only after the reinitiated consultation on the Lynx Amendment has been completed. The FWS's reasons for listing the Lynx as threatened under the ESA supports the Court's determination on this issue. The FWS "found that Federal land management plans did not adequately address risks to lynx and . . . that plans allowed actions that cumulatively could result in significant detrimental effects to lynx." 68 FR 40076-01 (July 3, 2003). The USFS has failed to analyze cumulative effects in this case because it has not relied on the programmatic analysis from the Lynx Amendment, or a forest plan that incorporates a properly consulted Lynx Amendment.

**B. Irreparable Harm**

Alliance has asked the Court to enjoin the Project until the Federal Defendants have completed consultation on the Lynx Amendments. Federal Defendants argue that Alliance has failed to show irreparable harm. Federal

Defendants assert that, even if the Court finds an ESA procedural violation, the Court cannot grant an injunction without Alliance's showing of irreparable harm. This Circuit has addressed its injunction and irreparable harm standards in ESA cases in recent case law.

The Ninth Circuit long has recognized that ESA cases that involve alleged procedural violations require an exception to the traditional test for injunctive relief. *Thomas v. Peterson*, 753, 764 (9th Cir. 1985), *abrogation recognized by Cottonwood*, 789 F.3d 1075. The Ninth Circuit in *Thomas* determined that, similar to the principle that the Circuit had applied to NEPA cases, irreparable damage presumably flows from a procedural ESA violation. *Id*. The Court further explained that the plaintiff did not bear the burden to prove "the effect of a proposed action on an endangered species" when an agency has failed to follow proper procedure. *Id*. at 765.

The Ninth Circuit re-visited its injunctive relief standards after the Supreme Court's opinions in *Winter v. Nat. Resource Def. Council, Inc.*, 555 U.S. 7 (2008) and *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139 (2010). *See Cottonwood Envtl. L. Ctr.*, 789 F.3d 1075. The Supreme Court rejected the Ninth Circuit's preliminary injunction standard in NEPA cases as "too lenient." *Winters*, 555 U.S. at 22. The Ninth Circuit had allowed a preliminary injunction when irreparable harm proved "possible." *Id*. *Winters* determined that a plaintiff seeking preliminary

injunction must show that irreparable harm proves "likely in the absence of an injunction." *Id*. *Monsanto* disapproved of Ninth Circuit cases that applied the presumption that an injunction represented the appropriate remedy in a NEPA violation except for unusual cases. *Monsanto*, 561 U.S. at 157.

In light of the Supreme Court's opinions, the Ninth Circuit determined in *Cottonwood*, that the presumption recognized in *Thomas* no longer represented good law. *Cottonwood Envtl. L. Ctr.*, 789 F.3d at 1092. The Court noted that its determination did not affect the Supreme Court's holding that the equities and public interest factors always tip in favor of the protected species. *Id*. at 1091. The Court also explained that district courts should consider "the purposes and objections of the ESA" for "fundamental direction" when "confronted with a request for injunctive relief to remedy a procedural violation of the ESA." *Id*. at 1092. The Court vacated the district court's denial of plaintiffs' injunctive relief to allow the plaintiff to make a showing of irreparable injury. *Id*.

This Court has applied a burden-shifting approach to ESA cases where the plaintiff has sought injunctive relief. *Alliance for the Wild Rockies v. Krueger*, 950 F.Supp.2d 1196 (2013); *Salix v. United States Forest Service*, 944 F.Supp.2d 984 (2013). The burden shifting approach allows the agency to put on evidence that the "action will not jeopardize the species or destroy or adversely modify its critical habitat," after the plaintiff has made an initial showing of irreparable harm.

*Krueger*, 950 F. Supp. 2d at 1204. The Court developed the burden-shifting approach to reconcile the presumption in *Thomas* with Ninth Circuit case law that held that plaintiff carried the initial burden to show irreparable harm. *Id*. at 1201.

Recently however, the Ninth Circuit has issued further guidance on the irreparable harm standard through its decision in *Christensen*. The Ninth Circuit determined that the district court had erred in presuming irreparable injury, but that the error proved harmless. *Christensen*, 2016 WL 6465748. The Court was satisfied that the plaintiffs had suffered irreparable harm because they "use[d] the project areas for wildlife viewing." *Id.* The Ninth Circuit did not enter into the burden shifting approach, and, in fact, stated that the district court's use of this approach was error. *Id.*

The Plaintiff organization's members have stated that the Project will irreparably harm "their interests in looking for, viewing, studying, and enjoying . . . lynx, . . . undisturbed in their natural surroundings." Declaration of Michael Garrity, ¶ ¶4, 6 (January 12, 2016). Plaintiff's showing of irreparable harm appears to be remarkably similar to the plaintiff's sufficient showing in *Christensen*. The Court is satisfied that the Plaintiff organization would suffer irreparable harm were the project to go forward.

Accordingly, **IT IS ORDERED:**

Plaintiff's motion for Preliminary Injunction is **GRANTED on the following terms:** the Project is enjoined until reinitiation of consultation on the Lynx Amendment is completed and Project-level consultation incorporating the Lynx Amendment analysis is also completed.

DATED this 22nd day of November, 2016.

_Brian Morris_
Brian Morris
United States District Court Judge